Filed 3/28/25  P. v. Harrison CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY HARRISON,<br><br>        Defendant and Appellant. | A171171<br><br>(San Mateo County Super. Ct. No. SC030204A) |

Timothy Harrison appeals from a postconviction order denying his petition for resentencing under Penal Code section 1172.6.[1]  His appointed appellate counsel filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), and Harrison subsequently filed a supplemental brief on his own behalf challenging the court's order regarding his section 1172.6 claim.  For the reasons set forth below, we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

This is the third appeal in this case.  The historical and procedural facts have been set forth in our prior opinions, which we incorporate by reference.  (*People v. Harrison* (Jun. 20, 1996, A067929) [nonpub. opn.]

---

[1] All statutory references are to the Penal Code.

(*Harrison I*); *People v. Harrison* (Mar. 29, 2022, A160852) [nonpub. opn] (*Harrison II*).)  We will only discuss the facts relevant to the issue before us.

Ramon Morales (Morales) and two companions (Jose M. and Jesus M.) were standing in front of a laundromat in East Palo Alto, waiting for a friend. Harrison and two other men walked up.  Harrison wore a ski cap, he and one of the other men carried pistols, and they asked Jesus for money.  When the victims did not comply, the robbers demanded the money, threatening to kill them.  Harrison and the other armed man pointed their pistols at the victims from a distance of about six or eight feet.  (*Harrison II*, *supra*, A160852.)

Despite the victims giving Harrison and the other robbers their money and jackets, the other armed robber said " ' "let's kill the Mexicans," ' " or words to that effect; Harrison said, " ' "[Goodbye] Mexicans." ' "  Both men began shooting.  Harrison shot Jesus and Jose.  Jesus thought the other gunman shot Morales, though he did not actually see this.  The robbers fled on foot.  (*Ibid*.)  When the police arrived at the scene, they found Morales dead and Jesus and Jose with gunshot injuries.  (*Harrison II*, *supra*, A160852.)

At trial, Harrison provided the following testimony.  He sold rock cocaine in the area, and there was racial animosity between African Americans and Mexican individuals selling drugs in the area.  (*Harrison II*, *supra*, A160852.)  On the evening of the shooting, Harrison saw the victims standing in front of the laundromat.  He suspected the victims were selling drugs, so he asked another drug dealer he knew to watch his back while he confronted the victims.  (*Ibid*.)  Harrison saw Jesus reach into his waistband and thought Jesus was reaching for a gun; in response, Harrison pulled out his gun and pointed it at the victims.  Jesus then turned and Harrison again thought Jesus was reaching for a gun, so Harrison fired a couple of shots

toward the ground or the lower part of the laundromat wall. Harrison heard additional shots and realized the person he asked to watch his back was also shooting at the victims. (*Ibid.*)

Harrison was convicted of the first-degree murder of Morales (§ 187, subd. (a)), together with a true finding on a special circumstance allegation that the murder was committed during the commission of a robbery (§ 190.2, former subd. (a)(17)(i), now subd. (a)(17)(A)), and an allegation that a principal was armed with a firearm during the murder (§ 12022, subd. (a)(1)). Harrison also was convicted of two counts of attempted murder (Jose and Jesus), together with true findings on allegations that he personally used a firearm in the commission of the attempted murders and robbery and had inflicted great bodily injury on one of the surviving victims. Harrison was sentenced to an indeterminate term of life without the possibility of parole plus one year (for the murder, robbery-murder special circumstance, and armed principal enhancement).

In his first appeal, this court affirmed the judgment and remanded for the trial court to correct the designation of the robbery conviction in the abstract of judgment. (*Harrison I*, *supra*, A067929.) Harrison raised no claims challenging the sufficiency of the evidence to support the jury's verdicts or the robbery-murder special-circumstance finding.

In 2019, Harrison filed a petition seeking to vacate his first-degree murder conviction and for resentencing under former section 1170.95, renumbered section 1172.6.[2] (*Harrison II*, *supra*, A160852.) He asserted he was convicted under a theory of felony murder, was not the actual murder,

_____

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10, eff. June 30, 2022; Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

and could not now be convicted of first or second degree murder under recent statutory revisions. (*Ibid.*) The trial court found Harrison had failed to make a prima facie showing of eligibility for relief and denied the petition without issuing an order to show cause or holding an evidentiary hearing. (*Ibid.*) This court reversed, concluding Harrison's petition stated a prima facie case that he was potentially eligible for relief, and remanded the matter to the trial court to issue an order to show cause and hold an evidentiary hearing on the petition. (*Ibid.*)

At the subsequent evidentiary hearing, the People asserted Harrison was guilty of felony murder under the amended felony murder statute because he aided and abetted the actual killer with the intent to kill and was a major participant in the underlying felony who acted with reckless indifference to human life. At the conclusion of the hearing, the court found beyond a reasonable doubt that Harrison was guilty of murder under both theories. The court thus denied Harrison's petition.

Harrison timely appealed. His appointed appellate counsel filed a brief under *Delgadillo, supra,* 14 Cal.5th 216. We gave Harrison notice that he had a right to file a supplemental brief or his appeal could be dismissed. (See *Delgadillo, supra,* 14 Cal.5th at pp. 231–232.) Harrison filed a supplemental brief alleging the court failed to adequately consider his age when finding he acted with reckless indifference to human life.

## DISCUSSION

On appeal, Harrison contends the trial court was required to consider his age, which encompassed his mental and emotional development at the time of the crime, in addition to the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). He

4

claims that while the court commented upon his age, it did not consider his maturity level at the time of the offense.

## I. Senate Bill No. 1437 and Felony Murder Under Current Law

"Under the felony-murder rule as it existed prior to Senate Bill [No.] 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during a felony . . . without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248.) Senate Bill No. 1437, which became effective on January 1, 2019, restricted the application of the felony murder rule by amending sections 188 and 189. (*Lamoureux*, at pp. 248–249.) "Section 189, subdivision (e), as amended, provides that a participant in a specified felony is liable for murder for a death during the commission of the offense only if one of the following is proven: '(1) The person was the actual killer. [¶] (2) The person . . . , with the intent to kill, aided, abetted . . . , or assisted the actual killer . . . . [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . .' " (*Id.* at p. 248.)

*Banks*, *supra*, 61 Cal.4th at page 794 and a follow-up decision, *Clark*, *supra*, 63 Cal.4th at pages 618 to 622, identified several factors courts should consider in determining whether, under the totality of the circumstances, a defendant was a major participant in the underlying felony who acted with reckless indifference to human life. (*In re Taylor* (2019) 34 Cal.App.5th 543, 551–553.)

In *Banks*, the California Supreme Court explained that a defendant's knowing participation in a robbery with others who are armed is insufficient, without more, to prove the defendant acted with reckless indifference to

human life.[3]  (*People v. Strong* (2022) 13 Cal.5th 698, 706 (*Strong*); *Banks*, *supra*, 61 Cal.4th at pp. 808–810.)  *Banks* concluded that "[a]wareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient," because a defendant must "knowingly creat[e] a 'grave risk of death' " through the defendant's "own actions."  (*Banks*, at pp. 808, 807.)  *Clark* then expanded on the "reckless indifference to human life" element, stating that it "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of [the defendant's] actions."  (*Clark*, *supra*, 63 Cal.4th at pp. 616, 617.)

In *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*), the California Supreme Court explained "reckless indifference to human life" had a subjective and an objective element.  (*Id.* at p. 677.)  "As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and [the defendant] must consciously disregard 'the significant risk of death [the defendant's] actions create.'  [Citations.]  As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to [the defendant], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation." '  . . . Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life."  (*Ibid.*)

---

[3] While *Banks* primarily focused on the "major participant" element, Harrison does not contest that issue.

Whether a defendant acted with reckless indifference to human life depends upon the totality of the circumstances. (*Scoggins*, *supra*, 9 Cal.5th at p. 677.) "Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.] ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Ibid*.; see also *Strong*, *supra*, 13 Cal.5th at p. 706.)

Youth is not a factor explicitly mentioned in the *Scoggins* decision, or in *Banks* or *Clark*, on which *Scoggins* relies. (*Scoggins*, *supra*, 9 Cal.5th at pp. 677–678; *Banks*, *supra*, 61 Cal.4th at p. 803; *Clark*, *supra*, 63 Cal.4th at pp. 618–623.) However, various Courts of Appeal—including the First District—have acknowledged age as a relevant factor. For example, in *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*), this Division held that "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life" and reasoned that "the 'hallmark features' of youth—'among them, immaturity, impetuosity, and failure to appreciate risks and consequences'—are arguably more germane to a juvenile's mental state than to his or her conduct." (*Id*. at p. 454.)

## II. Analysis

Harrison contends the trial court only considered his physical age at the time of the offense and did not meaningfully consider his maturity. We disagree.

The issue of Harrison's age and its impact on his potential liability was raised and argued during the evidentiary hearing on his petition. Both parties acknowledged age was a relevant factor for the court's analysis. Specifically, the prosecution noted this factor required the court to consider the impact of Harrison's age and the life experiences of a 24-year old on his awareness of the dangers of the crime. To this end, the prosecution argued: (1) Harrison was 24 at the time, "on the upper side of that [under the age of 26] spectrum"; (2) Harrison was "aware of the dangers posed by these crimes" because he had been twice convicted of robbery and, five days earlier, had committed an armed robbery during which he fired his gun; and (3) Harrison was aware of the dangers posed by guns because he testified "he always carried a gun" and the record indicated his familiarity with weapons.

In response, defense counsel asserted Harrison "was a[n] unsophisticated young person," who was engaged in "a totally spontaneous act. It wasn't planned." Defense counsel acknowledged Harrison was carrying a gun, but argued that "all kinds of young punks out there grab[ ] a gun and they know nothing about how to even use it or nothing more than their buddy had a gun and they took it as well." He argued there was evidence to support a theory that Morales was shot and killed during a second robbery attempt that occurred almost immediately after Harrison's robbery, Harrison—at 24-years old—could not necessary comprehend what was happening with a second shooting just seconds later, and the fact that he

carried a gun does not indicate he had reckless indifference to human life as to Morales's death.

In addition to the parties raising the factor of age, the court specifically addressed Harrison's age and acknowledged it "is a factor for the Court to consider." The court distinguished *In re Moore, supra,* 68 Cal.App.5th 434 because the minor in that matter was much younger—16 years old—and only partially involved in an auto theft. Here, the court explained, Harrison "participated in the case from start to finish. [Harrison] brought the weapon. He was familiar with that particular weapon and the dangerousness of it from using it in a prior incident." While the court agreed with defense counsel that Harrison was "unsophisticated" and the incident was unplanned, the court found the totality of the circumstances and other factors—"bringing the gun, pointing it at somebody from close proximity, making the statement in conjunction with the other statement about killing, his statement being 'Goodbye Mexicans,' his effort to minimize the scenario, and his knowledge of the actual weapon"—sufficient to demonstrate beyond a reasonable doubt reckless indifference to human life.

We find no error in the court's analysis. Nothing in the record indicates Harrison's conduct was driven by age or immaturity. And, apart from arguing he was under 26 years of age at the time of the crime, Harrison does not identify any evidence indicating his immaturity, susceptibility to peer pressure, or other factors such as childhood trauma that would bear on his cognitive or emotional maturity. (See *People v. Ramirez* (2021) 71 Cal.App.5th 970, 990–991.) Harrison initiated the confrontation and threatened the victims with a weapon. He encouraged the shooting with the statement, "Goodbye Mexicans," and shots were fired from close range. The risk of shooting at someone from close range is readily apparent to a person

9

in their 20s.  While many crimes could arguably be described as bearing the hallmarks of impetuousness and immaturity, Harrison fails to identify evidence demonstrating that his youth indeed contributed to any particular aspect of this offense.  (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 595 ["The fact of youth cannot overwhelm all other factors"].)

Accordingly, the record indicates the trial court properly considered Harrison's age as one factor in assessing his liability.  The court did not err in finding Harrison guilty of felony murder beyond a reasonable doubt and denying Harrison's petition.

### DISPOSITION

The order is affirmed.

PETROU, J.

WE CONCUR:

TUCHER, P.J.
RODRÍGUEZ, J.

10